**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**JUL 17 2017**

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JOSHUA A. WRIGHT      3:17CV00178 JM      PLAINTIFF

This case assigned to District Judge _Moody_
and to Magistrate Judge _Kearney_

vs.      NO.

THE PAXTON MEDIA GROUP, LLC
d/b/a PARAGOULD DAILY PRESS AND
JONESBORO SUN      DEFENDANT

## COMPLAINT

Comes now the plaintiff Joshua A. Wright by and through his attorneys Snellgrove, Langley, Culpepper, Williams & Mullally and for his Complaint against the defendant states:

### JURISDICTION AND VENUE

1.      This Court has Federal Question jurisdiction over this matter pursuant to 28 U.S.C. §1331.

2.      This Court diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) because plaintiff is requesting a judgment in excess of $75,000.00 including attorney's fees, and there's complete diversity among the parties.

3.      Venue is proper in this Court under 28 U.S.C. §1391(b)(2).

### PARTIES

4.      Plaintiff, Joshua Wright, is an individual residing in Jonesboro, Craighead County, Arkansas.

5.      Defendant, Paxton Media Group, LLC, is a limited liability company with its headquarters located at 201 S. Fourth Street, Paducah, Kentucky, 42003.

## FACTS

6.     Joshua Wright was at all times relevant to this Complaint an employee of Paxton Media Group, LLC, which owns the Paragould Daily Press paper that employed Joshua Wright.

7.     Wright was a paper carrier for the Paragould Daily Press.

8.     Paxton Media Group, LLC, through its agents, chose which route to which it would assign Joshua Wright.

9.     Paxton Media Group, LLC, required that the papers be picked up before a time certain each day.

10.     Paxton Media Group, LLC, required that the papers be delivered prior to a time certain each day.

11.     Paxton Media Group, LLC, through its agents, received any complaints about the routes run by their employees.

12.     Paxton Media Group, LLC, through its agents, assessed any discipline and/or monetary penalties for those complaints.

13.     Beginning in March 2016 and continuing through October 4, 2016, Joshua Wright and Paxton Media Group, LLC, had an employee employer relationship.

14.     Throughout his employment, Wright was the only African-American individual employed as a paper carrier for the Paragould Dailey Press.

15.     In September of 2016, Joshua Wright experienced sexual harassment at the hands of his supervisor, Melissa Miller.

16.     Miller made sexual advances toward Wright which included sexually explicit comments about him.

2

17.     These actions also included Miller exposing herself to Wright and sexual contact between Wright and Miller that was unsolicited and unwanted.

18.     Wright refused Miller's sexual advances.

19.     Wright notified Miller's superiors about her actions and requested assistance.

20.     After these events occurred, Miller began to take negative employment action against him.

21.     These actions included pressuring Wright to take route that paid substantially less money.

22.     On October 3, 2016, Wright suffered a mild heart attack and managed to transport himself to St. Bernards Medical Center in Jonesboro, Arkansas.

23.     When at the hospital, Wright lost consciousness and regained consciousness two days later.

24.     Upon regaining consciousness, Wright's wife informed him that he had been fired from his employment with Paxton Media Group, LLC at the Paragould Dailey Press.

25.     The firing occurred despite the fact that Wright's wife managed to obtain a substitute route carrier for the day he was absent from work.

26.     After the firing of Wright, his supervisor, Melissa Miller, stated "I finally got rid of his black ass and now I am back to my all white crew."

27.     Wright's firing, despite the fact that he obtained a substitute, was in retaliation for complaining about sexual harassment from his supervisor, Melissa Miller.

28.     Wright's firing was the result of race discrimination.

29.     Wright's firing was violation of the Americans With Disabilities Act.

3

30.     Joshua Wright filed a Complaint with the Equal Employment Opportunity Commission within the time limits prescribed by statute.

31.     Wright has received his notice of rights and right to sue letter from the EEOC, and files this Complaint within the time limits allowed by statute.

32.     A copy of Wright's notice of rights and right to sue letter is attached to this Complaint as Exhibit "A".

## COUNT I.  IN VIOLATION OF TITLE VII AND 42 U.S.C. § 1981 RACE DISCRIMINATION

33.     Plaintiff re-alleges and incorporates paragraphs 1 - 32 as is stated word for word herein.

34.     Defendant, through its agents, discharged Joshua Wright on October 4, 2016.

35.     Joshua Wright's race, African-American, was a motivating factor in the defendant's decision to discharge Joshua Wright.

36.     The loss of his job has damaged Joshua Wright, and continues to cause damage to him as he has found it difficult to find steady employment.

37.     Nevertheless, Joshua Wright has attempted to gain new employment and continues to attempt to gain new employment.

38.     Defendant's agent, Melissa Miller, Joshua Wright's supervisor, knew that Joshua Wright's termination based on race was a violation of law, or she acted in reckless disregard of that law.

39.     Therefore, this Court should award both actual and punitive damages because the defendant, through its agents, acted with malice or reckless indifference to plaintiff's rights and did not make a good-faith effort to comply with the law.

## COUNT II.  SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

40.     The plaintiff re-states and alleges each and every fact alleged in paragraphs 1 - 39 as if set out word for word herein.

41.     Joshua Wright was subjected to flashing from his supervisor and plaintiff's agent, Melissa Miller.

42.     Joshua Wright was also subjected to inappropriate physical contact from his supervisor and plaintiff's agent, Melissa Miller.  This conduct was unwelcome, and was based on his gender, male.  The defendant's agent, Melissa Miller, flashed her breasts to the plaintiff and inappropriately touched Joshua Wright's crotch and made inappropriate comments about his sexual anatomy.

43.     Joshua Wright rejected these sexual advances, and the rejection of these sexual advances was motivating factor in the defendant's decision to terminate his employment.

44.     Defendant's actions resulted in actual damages to Joshua Wright, and furthermore defendant's actions were in willful violation of the law and/or reckless disregard of the law.  Therefore, in addition to actual damages, the plaintiff should be awarded punitive damages in an amount to be determined at trial.

## COUNT III.  VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

45.     On October 3, 2016 Joshua Wright was admitted to the hospital recovering from a mild heart attack.

46.     This mild heart attack substantially limited his ability to perform normal life activities because of his loss of consciousness.  Joshua Wright, through his wife, provided an adequate substitute to cover his route for the time he would have missed.

47.    The substitute informed the supervisor, Melissa Miller, of Joshua Wright's immediate impairment.

48.    Substitute was ready willing and able to perform the essential functions of the job.

49.    Joshua Wright's hospitalization because of his mild heart attack was a motivating factor in defendant's agent's decision to fire Joshua Wright.

50.    Wright's loss of his job has resulted in actual damages to him in an amount that will be determined at trial.

51.    The defendant's agent's actions were willful and/or in reckless disregard of the law.  Therefore, Joshua Wright should be awarded punitive damages in an amount to be determined at trial.

## COUNT IV.  RETALIATION UNDER TITLE VII AND 42 U.S.C. § 1981

52.    The plaintiff reasserts each and every fact set out in paragraphs 1 - 51 as if stated word for word herein.

53.    Joshua Wright notified the defendant's agents that his manager, Melissa Miller, had sexually harassed him by engaging in unwanted sexual contact and sexual comments.

54.    Joshua Wright also complained to his supervisors that the defendant's agent, Melissa Miller, discriminating against him on the basis of his race.

55.    Joshua Wright's race and his complaining about the unwanted sexual harassment resulted in his discharge.

56.    The discharge would have a chilling effect on a reasonable individual in similar circumstances, to the extent that it would prevent him or her from complaining about the sexual harassment and race discrimination.

6

57.    Joshua Wright's complaints about the sexual harassment and racial discrimination were the determining factors in his discharge.

58.    Wright's loss of employment has resulted in actual damages to him in an amount to be determined at trial.

59.    The defendant's agent's actions were willful, and/or in reckless disregard of the law.  Therefore, Joshua Wright should be awarded punitive damages.

WHEREFORE, plaintiff, Joshua Wright, prays for a judgment against the defendant, Paxton Media Group, LLC in a specific amount to be determined at trial, but in any event not less than the amount required to maintain federal diversity jurisdiction.

Respectfully submitted,

SNELLGROVE, LANGLEY, CULPEPPER, WILLIAMS & MULLALLY

By _Abram Skarda_____

Abram Skarda ABA #2014215
P.O. Box 1346
Jonesboro, AR 72403-1346
 Phone:  (870) 932-8357
askarda@snellgrovefirm.com

Attorneys for Plaintiff, Joshua Wright

7

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  **Joshua A. Wright**<br>**101 Brookeland Apt. 4**<br>**Brookland, AR 72417** | From:  **Little Rock Area Office**<br>**820 Louisiana**<br>**Suite 200**<br>**Little Rock, AR 72201** |

| | |
|---|---|
| ☐ | On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **493-2017-00187** | **Lisa Yoshisaki,**<br>**Investigator** | **(501) 324-5066** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒   Other *(briefly state)*     **No Jurisdiction-No employer/employee relationship**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

_____      APR 2 0 2017

**William A. Cash, Jr.,**          *(Date Mailed)*
**Area Office Director**

Enclosures(s)

cc:
| | |
|---|---|
| **Robert W. Horton**<br>**BASS, BERRY & SIMS**<br>**150 Third Avenue South**<br>**Suite 2800**<br>**Nashville, TN 37201** | **Abram Skarda**<br>**SNELLGROVE, LANGLEY, CULPEPPER, WILLIAMS**<br>**& MULLALLY**<br>**P.O. Box 1346**<br>**Jonesboro, AR 72403** |

## EXHIBIT "A"

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),**
**the Genetic Information Nondiscrimination Act (GINA), or the Age**
**Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

### ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

### ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

- ➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- ➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- ➤ **Only one** major life activity need be substantially limited.
- ➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- ➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
- ➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

- ➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- ➤ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- ➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.